[No. B204688. Second Dist., Div. Four. Apr. 30, 2009.]

LAWRENCE B. LOCKWOOD, Plaintiff and Appellant, v.
SHEPPARD, MULLIN, RICHTER & HAMPTON et al., Defendants,
Respondents and Cross-Appellant.

**COUNSEL**

Howarth & Smith, Don Howarth, Suzelle M. Smith and Lee Crawford-Boyd for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Gregory A. Long, Gary A. Clark, Darren M. Franklin and Robert J. Stumpf, Jr., for Defendants, Respondents and Cross-Appellant.

**OPINION**

**WILLHITE, J.**—Plaintiff Lawrence B. Lockwood appeals from the orders granting special motions to strike his original complaint and first amended complaint under Code of Civil Procedure section 425.16 (hereafter, section

425.16), and the judgment entered in favor of defendants Sheppard, Mullin, Richter & Hampton and Jonathan Hangartner (collectively, Sheppard Mullin). Hangartner individually cross-appeals from the judgment denying him attorney fees arising from the special motions to strike. We conclude that Lockwood's complaint arises under the patent laws of the United States and therefore is subject to the exclusive jurisdiction of the federal courts under section 1338 of title 28 of the United States Code. Therefore, we vacate the judgment and remand to the trial court with directions to dismiss the action for lack of subject matter jurisdiction.

## BACKGROUND

Lockwood is an inventor. In the past three decades, he has obtained a dozen patents in the fields of multimedia search systems, interactive video computing terminals, as well as e-commerce and computerized financial services. Two of those patents are involved in the present case: United States Patent No. 5,576,951 C1 (the '951 patent), entitled "Automated Sales and Services System," and United States Patent No. 6,289,319 C1 (the '319 patent), entitled "Automatic Business and Financial Transaction Processing System." Lockwood applied for both patents in 1994; the '951 patent issued in 1996, and the '319 patent issued in 2001.

Lockwood believed that companies using e-commerce systems that included interactive, searchable computerized systems for finding, selecting, and ordering information, goods, or services infringed his patents. Therefore, in 2002 he (through his company, PanIP, LLC) instituted a patent enforcement program in which he offered licenses to companies he believed were infringing his patents; if a company declined, he filed a patent infringement lawsuit against it. He had some initial success, obtaining 24 license agreements in just over a year, but the program also resulted in dozens of patent infringement lawsuits filed in federal district court. Sheppard Mullin, through Attorney Hangartner, represented at least 14 of the defendants in those lawsuits.

In response to the lawsuits, on May 5, 2003, Sheppard Mullin filed with the United States Patent and Trademark Office (USPTO) requests for reexamination of the '951 and '319 patents. The requests challenged the validity of the patents on the ground that the claims of the patents were anticipated by prior patents or publications (i.e., prior art).

■ Under the patent laws, any person may file a request for reexamination. (35 U.S.C. § 302.) Within three months after a request is filed, the

USPTO must determine whether the request raises "a substantial new question of patentability affecting any claim of the patent." (35 U.S.C. § 303(a).) The patent owner is not permitted to file a statement or response to the request within this three month period. (37 C.F.R. § 1.530 (2008).) If the USPTO determines that a substantial new question of patentability has been raised, it conducts a reexamination of the patent. (35 U.S.C. § 304.) At the conclusion of the reexamination, the USPTO issues a certificate canceling any claim of the patent determined to be unpatentable, confirming any claim determined to be patentable, and incorporating in the patent any proposed amended or new claim determined to be patentable. (35 U.S.C. § 307.)

In the present case, the USPTO determined that Sheppard Mullin's requests for reexamination each raised a substantial new question of patentability, and granted the requests on July 7, 2003 (for the '951 patent), and July 29, 2003 (for the '319 patent). It then conducted the reexamination over the next several years.

Once the USPTO granted the requests for reexamination, Lockwood's patent infringement lawsuits were stayed, and his enforcement program was ineffective because potential licensees refused to pay any licensing fees until the USPTO determined the validity of the patents. Lockwood ultimately agreed to settle the patent infringement lawsuits in the spring of 2004 and ended his enforcement program.

On June 6, 2006, the USPTO issued a "Notice of Intent to Issue Ex Parte Reexamination Certificate" that indicated the certificate would confirm the patentability of all claims of the '319 patent. That certificate was issued on July 17, 2007. The USPTO issued a similar notice of intent with regard to the '951 patent on September 24, 2007.

Meanwhile, on June 4, 2007, Lockwood, acting in propria persona, filed the instant lawsuit. He alleged that Sheppard Mullin made false representations in the requests for reexamination, by misrepresenting the date of one of the alleged publications and misrepresenting what the other publications actually disclosed. He also alleged that Sheppard Mullin intended that the USPTO would rely upon those misrepresentations to grant the requests, and that Sheppard Mullin was aware that Lockwood would be unable to enforce his patents during the pendency of the reexamination proceedings, which typically last for several years. Although the complaint does not set forth specific causes of action, it includes the following allegation: "Defendants' conduct was wrongful, and constituted willful and negligent interference with plaintiff's economic and prospective economic advantages. Defendant's [*sic*]

wrongful conduct also constitutes common law and statutory unfair competition under the common and statutory law of California, including California Business and Professions Code, sections 17,200 [*sic*] et seq."

Sheppard Mullin filed a demurrer and a special motion to strike the complaint under section 425.16. Among other arguments, Sheppard Mullin asserted that all of Lockwood's causes of action were barred by the California litigation privilege, Civil Code section 47, subdivision (b) (hereafter, section 47(b)). Before his opposition was due, Lockwood retained counsel and filed an amended complaint. The amended complaint alleged causes of action for malicious prosecution, intentional interference with prospective economic relations, and fraudulent misrepresentations, all of which were based upon the same facts alleged in the original complaint.

Lockwood subsequently filed an opposition to Sheppard Mullin's special motion to strike. He argued that section 425.16 did not apply because the conduct upon which the causes of action are based was unprotected activity, and that federal law preempted section 47(b) and section 425.16 because application of those statutes conflicted with federal interests in enforcing patent laws. He also contended he presented sufficient evidence to support his causes of action.[1]

The trial court granted Sheppard Mullin's special motion to strike. Addressing only the original complaint, the court found that the lawsuit arose from protected activity, that the section 47(b) litigation privilege was not preempted by federal law, and that all of Lockwood's claims were barred by that privilege. When questioned about whether the court's ruling applied to both the original and amended complaint, the court stated that it did not address whether Lockwood had a right to amend his complaint and concluded the hearing. The written order does not address the amended complaint.[2]

Sheppard Mullin filed a motion for attorney fees under section 425.16, subdivision (c), as well as a demurrer and a special motion to strike the amended complaint. In its special motion to strike, Sheppard Mullin argued that the amended complaint could not be considered in light of the granting of the first special motion to strike. It also argued that, in any event, Lockwood could not prevail on his interference and fraud claims because section 47(b) provided absolute immunity (as the trial court previously ruled),

---

[1] Lockwood addressed only the causes of action alleged in his amended complaint, and therefore did not address the statutory or common law unfair competition claims.

[2] Although the hearing was before Judge John Shepard Wiley, Jr., the written order was signed by Judge Reginald A. Dunn.

and he could not prevail on his malicious prosecution claim because the USPTO conducted an independent investigation before initiating the reexamination proceedings, and the statute of limitation barred that claim.

In opposition to the special motion to strike, Lockwood once again argued that section 425.16 and section 47(b) were preempted by federal law, and that the evidence he submitted was sufficient to establish prima facie claims of malicious prosecution, fraud, and intentional interference with prospective economic relations. The trial court granted the special motion to strike, finding that the amended complaint arose from protected activity and that Lockwood could not prevail on his malicious prosecution claim because it was barred by the statute of limitations. The court denied the motion for attorney fees on the ground that Sheppard Mullin and Hangartner were self-represented and therefore were not entitled to attorney fees.

Lockwood timely filed notices of appeal from the orders granting each special motion to strike,[3] and Hangartner timely filed a notice of cross-appeal from the order denying attorney fees.

## DISCUSSION

Lockwood's opening brief on appeal raises issues of federal jurisdiction and preemption of state law, as well as issues regarding the trial court's rulings on the merits of Sheppard Mullin's section 425.16 motions. Because we hold that Lockwood's complaint is subject to the exclusive jurisdiction of the federal courts, we need not address any other issues, nor do we address Hangartner's cross-appeal.

A. *Preliminary Matters*

At the outset, we must acknowledge the peculiar circumstances of this case. Lockwood, the party who filed his complaint in state court, is the party arguing that the federal courts have exclusive jurisdiction of his claims. Moreover, he did not assert this argument until after the trial court dismissed his claims on the merits. In fact, it was Sheppard Mullin that first raised the issue, in its reply brief in support of its first special motion to strike. In response to Lockwood's contention that sections 425.16 and 47(b) were preempted by federal law, Sheppard Mullin wrote, "If anything, it is Lockwood's complaint that is preempted. . . . If Defendants' Anti-SLAPP defense truly poses 'an obstacle to the accomplishment of the federal scheme of patent law and the regulation of the USPTO,' . . . then it is only because

---

[3] At Lockwood's request, we consolidated his appeals.

Lockwood's complaint itself is based upon conduct exclusively governed by federal patent law."

The first time Lockwood raised the issue was at the hearing on the first special motion. At that hearing, his counsel noted that two days earlier, the Federal Circuit Court of Appeals decided two cases, *Air Measurement Tech v. Akin Gump Strauss Hauer* (Fed.Cir. 2007) 504 F.3d 1262 (*Air Measurement*) and *Immunocept, LLC v. Fulbright & Jaworski, LLP* (Fed.Cir. 2007) 504 F.3d 1281 (*Immunocept*), that, according to counsel, "suggest" the instant case might be within the exclusive jurisdiction of the federal courts. Counsel did not, however, pursue this argument until this appeal, in which Lockwood argues that, in fact, under the reasoning of those two Federal Circuit decisions, this case *is* subject to exclusive federal jurisdiction and should have been dismissed for lack of subject matter jurisdiction.

■ Sheppard Mullin argues that we should reject Lockwood's argument because he failed to show prejudicial error or an appealable issue, since the outcome—dismissal of Lockwood's claims—will be the same regardless whether his argument prevails. What Sheppard Mullin overlooks is the difference between a dismissal on the merits and a dismissal for lack of jurisdiction. A dismissal on the merits has res judicata effect (*Goddard v. Security Title Ins. & Guar. Co.* (1939) 14 Cal.2d 47 [92 P.2d 804]); a dismissal for lack of jurisdiction does not (*Nichols v. Canoga Industries* (1978) 83 Cal.App.3d 956, 967 [148 Cal.Rptr. 459]). Moreover, a dismissal on the merits cannot be affirmed on appeal if the trial court did not have jurisdiction over the subject matter of the action; instead, the judgment of dismissal must be vacated. (*Chromy v. Lawrance* (1991) 233 Cal.App.3d 1521 [285 Cal.Rptr. 400].)

The dismissal in the instant case was on the merits. Hence, if Lockwood is correct that his claims should have been dismissed for lack of jurisdiction, he was prejudiced by the dismissal on the merits, and we must vacate that dismissal and direct the trial court to enter a dismissal for lack of subject matter jurisdiction. We certainly understand Sheppard Mullin's frustration that Lockwood is challenging the jurisdiction of the court in which he chose to file his claims. But as the Ninth Circuit recently commented, in a case in which a defendant removed the matter to federal court on federal question grounds and then challenged the federal court's jurisdiction on appeal after the court ruled against it, "the County may be guilty of chutzpah, but we must consider the merits of its argument anyway." (*International Union of*

*Operating Engineers v. County of Plumas* (9th Cir. 2009) 559 F.3d 1041, 1044 [holding that federal court lacked jurisdiction].)

## B. *The Law Governing Federal Jurisdiction*

■ Section 1338 of title 28 of the United States Code (section 1338) provides in relevant part: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . . Such jurisdiction shall be exclusive of the courts of the states in patent . . . cases." The United States Supreme Court in *Christianson v. Colt Industries Operating Corp.* (1988) 486 U.S. 800 [100 L.Ed.2d 811, 108 S.Ct. 2166] (*Christianson*) set out a test to determine whether a case is subject to the exclusive jurisdiction described in section 1338. The court held that section 1338 jurisdiction extends "only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." (*Christianson*, at p. 809; see also *Franchise Tax Bd. v. Laborers Vacation Trust* (1983) 463 U.S. 1, 13 [77 L.Ed.2d 420, 103 S.Ct. 2841] ["Even though state law creates appellant's causes of action, its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties."].) The court later restated the test (under the general jurisdictional statute for claims arising under the Constitution, laws, or treaties of the United States, 28 U.S.C. § 1331) to address federalism concerns: "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." (*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.* (2005) 545 U.S. 308, 314 [162 L.Ed.2d 257, 125 S.Ct. 2363] (*Grable*).)[4]

---

[4] At oral argument, Sheppard Mullin argued that because, in its view, Lockwood's claims were barred by the California litigation privilege (Civ. Code, § 47(b)), no issue of federal patent law was implicated by those claims, and therefore no federal subject matter jurisdiction existed. The test for federal patent law jurisdiction, however, " ' "must be determined from what necessarily appears *in the plaintiff's statement of his own claim in the bill or declaration.*" ' " (*Christianson, supra*, 486 U.S. at p. 809, italics added.) The plaintiff's well-pleaded complaint must establish "either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law." (*Ibid.*) If so, federal jurisdiction exists, even if a state law defense would otherwise defeat the claim.

■ Two decisions of the Federal Circuit, *Air Measurement, supra*, 504 F.3d 1262, and *Immunocept, supra*, 504 F.3d 1281, are particularly instructive. There, the Federal Circuit applied the jurisdictional test set forth by the Supreme Court in *Christianson* and *Grable* to determine whether the federal courts had exclusive jurisdiction over two legal malpractice lawsuits involving patents. We note that the Federal Circuit is uniquely qualified to determine jurisdictional issues in cases involving patents, since it has exclusive jurisdiction over "an appeal from a final decision of a district court of the United States . . . if the jurisdiction of that court was based, in whole or in part, on section 1338 . . . ." (28 U.S.C. § 1295(a)(1).) Although the ways in which the patent issues arose in *Air Measurement* and *Immunocept* (which were decided on the same day) were different, the Federal Circuit's analysis of the *Christianson/Grable* test was consistent in both cases.

In *Air Measurement*, the plaintiffs (collectively, AMT) filed a legal malpractice lawsuit in state court against their attorneys. (*Air Measurement, supra*, 504 F.3d at p. 1265.) The attorneys had represented AMT in prosecuting patent applications for a safety device and related technology AMT had developed, and had filed patent infringement actions on AMT's behalf. (*Id.* at pp. 1265–1266.) AMT alleged in the legal malpractice action that, after AMT replaced the attorneys with new counsel in the infringement litigation, AMT discovered various errors the attorneys had made in the patent prosecution and infringement litigation. According to AMT, those errors forced them to settle the patent infringement litigation for significantly less than fair market value because, among other things, the attorneys' errors allowed the alleged infringers to raise patent defenses (such as invalidity and unenforceability) that would not otherwise have been available. (*Id.* at p. 1266.) The attorneys removed the case to federal court on the ground that AMT's malpractice lawsuit required the resolution of a substantial question of patent law. (*Ibid.*) Three years later, the attorneys moved to remand the case, arguing that section 1338 subject matter jurisdiction was lacking. (504 F.3d at p. 1267.) The district court denied the motion and certified the jurisdiction issue for interlocutory appeal. (*Ibid.*) The Federal Circuit granted the attorneys' petition for permission to appeal. (*Ibid.*)

In *Immunocept, supra*, 504 F.3d 1281, Immunocept retained the defendant attorneys to prosecute on its behalf a patent application for certain medical technology. (*Id.* at p. 1283.) After obtaining the patent, Immunocept entered into negotiations with a potential financial partner, whose attorneys discovered a flaw in the drafting of claim 1 of the patent, which they believed resulted in the patent providing inadequate protection from competing methods. (*Ibid.*) Immunocept filed in federal court a legal malpractice action under

state law, alleging section 1338 as the jurisdictional basis. (504 F.3d at pp. 1283–1284.) After the district court granted summary judgment in the attorneys' favor, Immunocept appealed. The Federal Circuit ordered the parties to brief whether jurisdiction was proper under section 1338. (504 F.3d at p. 1284.)

The Federal Circuit began its analysis of jurisdiction in each case under the *Christianson/Grable* test by examining the allegations of the complaint and the elements of a legal malpractice claim under state law (both cases involved Texas law). In *Air Measurement*, the court observed that the complaint alleged that the attorneys' errors in the patent prosecution and infringement litigation caused AMT to settle the patent litigation for significantly less than fair market value. (*Air Measurement, supra*, 504 F.3d at p. 1268.) The court noted that under Texas law, to establish the causation element of its legal malpractice claim, AMT would have to prove that they would have prevailed in the infringement litigation but for the attorneys' negligence, which would require the trial court "to adjudicate, hypothetically, the merits of the infringement claim." (*Id.* at p. 1269.) In *Immunocept*, the court pointed out that the only attorney error alleged in the complaint was a drafting mistake that Immunocept alleged narrowed the scope of patent. (*Immunocept, supra*, 504 F.3d at pp. 1284–1285.) The court observed that Immunocept could not establish attorney negligence without addressing claim scope. (*Id.* at p. 1285.)

The Federal Circuit found that section 1338 jurisdiction was proper in both cases. (*Air Measurement, supra*, 504 F.3d at p. 1269 ["Because proof of patent infringement is necessary to show AMT would have prevailed in the prior litigation, patent infringement is a 'necessary element' of AMT's malpractice claim and therefore apparently presents a substantial question of patent law conferring § 1338 jurisdiction."]; *Immunocept, supra*, 504 F.3d at p. 1285 ["Because patent claim scope defines the scope of patent protection, [citation], we surely consider claim scope to be a substantial question of patent law."].) In reaching this conclusion in each case, the court considered other instances in which it found a state law claim presented a substantial issue of patent law. For example, a state law claim for business disparagement, based upon the defendant's warning to the plaintiff's customers that the plaintiff's product infringed the defendant's patent, invoked section 1338 jurisdiction, because it required the plaintiff to prove that its product did not infringe. (*Additive Controls & Measurement Sys. v. Flowdata* (Fed.Cir. 1993) 986 F.2d 476, 478.) Similarly, section 1338 jurisdiction existed over state law claims for injurious falsehood and violation of Business and Professions Code section 17200, because the plaintiff's allegation that the defendant asserted ownership of patents that were invalid or unenforceable required the plaintiff to prove patent invalidity or unenforceability. (*Hunter Douglas, Inc. v.*

*Harmonic Design, Inc.* (Fed.Cir. 1998) 153 F.3d 1318, 1329, overruled on other grounds in *Midwest Industries, Inc. v. Karavan Trailers, Inc.* (Fed.Cir. 1999) 175 F.3d 1356.) In a third example, section 1338 jurisdiction encompassed a state law breach of contract claim arising from a contractual duty to assign certain patents, because the plaintiff had to prove that the application for the patent at issue fell within the patent examining guidelines as a "continuation-in-part" of a prior application. (*University of West Virginia v. Vanvoorhies* (Fed.Cir. 2002) 278 F.3d 1288, 1295; see also *Pro-Mold & Tool Co. v. Great Lakes Plastics* (Fed.Cir. 1996) 75 F.3d 1568, 1574 [determination of whether alleged inequitable conduct in prosecution of a patent application constitutes unfair competition is within exclusive jurisdiction of Federal Circuit].)

## C. *Application of the Law to This Case*

With these examples in mind, we turn to the allegations of the complaint in the present case. Lockwood alleges that Sheppard Mullin knowingly made false representations in its requests for reexamination regarding whether a certain publication qualified as prior art, and misrepresented what was shown in other prior art references, for the purpose of convincing the USPTO to initiate reexamination of Lockwood's patents. He alleges he was damaged because he had to defend the reexamination and was unable to enforce his patent rights until the reexamination concluded several years later, with a finding reconfirming the patentability of the reexamined claims of the patents. To prevail on any of his claims, Lockwood at a minimum would have to prove that (1) the prior art references Sheppard Mullin cited did not qualify as prior art under the patent laws and/or did not disclose what Sheppard Mullin said they disclosed; (2) Sheppard Mullin knew or should have known that its representations regarding the prior art references were incorrect or misleading; and (3) but for Sheppard Mullin's misrepresentations, the USPTO would not have granted the request for reexamination.

With regard to the first and second elements, the court would have to determine whether the publications cited as prior art did in fact teach or disclose the systems or uses as Sheppard Mullin described and, if not, whether a reasonable patent attorney would have known that those descriptions were incorrect or misleading. Although these determinations would require some knowledge and application of patent law (as well as an ability to understand highly technical data), it is not clear whether they involve such substantial questions of patent law that the claims would be subject to exclusive federal jurisdiction under section 1338. But there is no doubt that the third element Lockwood would have to prove—that the USPTO would

not have granted reexamination but for Sheppard Mullin's misrepresentations—presents such a substantial question of patent law.

To determine whether the USPTO would have granted the reexamination request in the absence of Sheppard Mullin's alleged misrepresentations, the court would have to determine whether the prior art references, properly characterized, meet the standard for reexamination under the patent laws. In other words, the court would have to determine whether the prior art raises "a substantial new question of patentability." (35 U.S.C. § 303(a).) That determination must be made in accordance with USPTO procedures, which provide that prior art raises a substantial new question of patentability where " 'there is a substantial likelihood that a reasonable examiner would consider the prior art patent or printed publication *important* in deciding whether or not the claim is patentable.' [Citation.]" (*Procter & Gamble Co. v. Kraft Foods Global, Inc.* (Fed.Cir. 2008) 549 F.3d 842, 848, quoting Manual of Patent Examining Procedure (8th ed. (rev. 7) 2008), § 2642.) Obviously, therefore, the court would be presented with substantial questions of patent law, effectively having to put itself in the position of a "reasonable" patent examiner and determine whether the prior art would be considered important in deciding the patentability of Lockwood's patent claims.

At first blush, it might be said that the USPTO has already made this determination, since it ultimately found (at the conclusion of the reexamination proceedings) that the prior art failed to disclose, teach, or suggest the invention described by Lockwood's patents. But the USPTO's determination, made at the conclusion of a three or four year reexamination process, is not particularly instructive as to whether the request for reexamination would have been granted in the first place absent Sheppard Mullin's alleged misrepresentations. This is because the Manual of Patent Examining and Procedure instructs, " ' "a substantial new question of patentability" as to a patent claim could be present even if the examiner would not necessarily reject the claim as either anticipated by, or obvious in view of, the prior art patents or printed publications.' [Citation.]" (*Procter & Gamble Co. v. Kraft Foods Global, Inc., supra,* 549 F.3d at p. 848, quoting Manual of Patent Examining Procedure, *supra,* § 2642.) Thus, the USPTO's decision confirming Lockwood's patents does not obviate the substantial questions of federal patent law involved in determining whether the prior art would be considered important in deciding the patentability of Lockwood's patent claims.

In sum, we hold that Lockwood's complaint, which seeks to regulate the conduct of attorneys appearing before the USPTO and requires resolution of substantial issues of patent law, is subject to the exclusive jurisdiction of the federal courts. In making this determination, we express no opinion regarding the merits of Lockwood's claims or Sheppard Mullin's defenses.

## DISPOSITION

The judgment is vacated. On remand, the trial court is directed to dismiss the matter for lack of subject matter jurisdiction. Sheppard Mullin shall recover its costs on appeal.

Epstein, P. J., and Suzukawa, J., concurred.